IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATHANIEL M. ERVIN,

     Plaintiff,

v.

ATLANTA PUBLIC SCHOOLS,

     Defendant.

CIVIL ACTION NO.
1:24-cv-03060-LMM-RDC

## FINAL REPORT AND RECOMMENDATION

This is a *pro se* employment discrimination case. Plaintiff Nathaniel Ervin has sued Defendant Atlanta Public Schools ("APS"), alleging unlawful discrimination under federal and state laws. Pending before the Court is APS' motion to dismiss. (Doc. 16). For the reasons stated below, the undersigned **RECOMMENDS** that APS' motion to dismiss be **GRANTED**.

## I. BACKGROUND

### A. Factual Background

The facts below are taken from Plaintiff's complaint and construed in his favor. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Plaintiff is an African-American male who identifies as gay, and he began working as a teacher for APS in 2021. (Doc. 15 at 7). At the start of the 2023–2024 school year, Plaintiff worked at Booker T. Washington High School ("BWHS"). (*Id.* at 5).

On July 28, 2023, Plaintiff was placed on a professional development plan. (*Id.* at 5). While at work on August 3, 2023, he discovered he had been evicted from his home. (*Id.*). The principal allowed him to leave early and take the following day off to handle personal matters related to the eviction. (*Id.*) Plaintiff returned to work on August 7. (*Id.*).

On August 25, 2023, a student insulted Plaintiff and called him a "faggot." (*Id.*). Plaintiff chased the student towards the main office in an attempt to identify him. (*Id.*). He was told to take the rest of the day off due to the optics of chasing a student through the halls. (*Id.*). Plaintiff returned to work on August 29. (*Id.*). The next day, Human Resources ("HR") contacted him as part of their investigation into the incident. (*Id.*).

That same day, another teacher told Plaintiff that she regularly had to "redirect" three of her students for referring to him using homophobic slurs. (*Id.*). Plaintiff submitted disciplinary referrals for the students and informed their parents, but was told by two assistant principals that discipline of those students was under the purview of the teacher who heard the remarks. (*Id.*). Plaintiff had a mental breakdown in front of the assistant principals, one of whom was his performance evaluator. (*Id.*). He was permitted to go home early and take the next day off. (*Id.*).

On September 8, 2023, Plaintiff overheard a student call another student a "faggot" and submitted a disciplinary referral. (*Id.*). On September 12, he filed a Level I Grievance with the school's HR department reporting that he had been subjected to sexual harassment, discrimination, and a hostile work environment because he had not

received "any notification about the nature of [the] reprimand for any of the students" he had referred for disciplinary action during the previous three weeks. (*Id*. at 10). In response, HR explained that discrimination complaints were not handled at the local school level. (*Id*.).

On September 15, 2023, Plaintiff submitted a disciplinary referral for a disabled student who refused to do his work in Plaintiff's class and threatened to "smack and punch" Plaintiff. (*Id*. at 5). He refused to allow the student to return to his classroom. (*Id*.). A few days later, on September 18, Plaintiff had a check-in meeting pursuant to his professional development plan. (*Id*.). He felt that none of his concerns were addressed in the meeting, and that William Wade ("Wade"), his direct supervisor, was attacking his "professional record and his mental stability." (*Id*. at 5, 7). Per Plaintiff, Wade stated that he believed Plaintiff "needed mental assistance" and advised that Plaintiff "would have to prove to him that he was fit for duty." (*Id*. at 9). Plaintiff asked to be excused from the meeting and immediately filed a Level II grievance with the superintendent and district-level HR. (*Id*. at 7, 10).

On September 19, 2023, Plaintiff went to the Atlanta Equal Employment Opportunity Commission ("EEOC") to report his grievance. (*Id*. at 10). He filed a charge of discrimination with the EEOC the next day. (*Id*. at 5, 10). On October 5, Plaintiff was told that he could not deny the disabled student who threatened to "smack and punch" him access to his class. (*Id*. at 5). Plaintiff's administrative team permitted him to leave work early to avoid interacting with the student. (*Id*.). The next day,

Plaintiff was assigned to work remotely while HR investigated both his alleged misconduct and the grievances he had filed. (*Id.*). On October 10, he reached out to inquire about the basis for his remote work assignment and received a letter detailing his behavioral incidents since the start of the school year and asking him to complete a medical evaluation to assess his fitness for duty. (*Id.*). Plaintiff declined to undergo a medical evaluation. (*Id.*).

On November 17, 2023, Plaintiff received a Letter of Direction for repeated failure to complete his remote work assignments. (*Id.* at 5; Doc. 15-1 at 5). On December 15, 2023, his union representative informed Plaintiff that APS had decided not to pursue disciplinary action and had instead given him the option to transfer to another school. (Doc. 5 at 5). Plaintiff opted to transfer. (*Id.*).

On January 10, 2024, two days into his new position at D.M. Therrell High School, a student called Plaintiff a "faggot" when he confiscated her iPad. (*Id.* at 6). In response, an assistant principal organized a meeting with Plaintiff and the student that ended "on a high note." (*Id.*). On January 19, a different student made anti-gay remarks toward Plaintiff. (*Id.*). Plaintiff reported the incident to the administrative team. (*Id.*).

On March 5, 2024, another student referred to Plaintiff using a homophobic slur. (*Id.*). Per Plaintiff, another teacher offered to accompany him to the administrative office to report the comments. (*Id.*). They happened to encounter the student who made the remarks on their way to the office, and the student again taunted Plaintiff with anti-gay remarks. (*Id.*). Plaintiff also alleges that APS investigated the incident and

4

concluded that Plaintiff verbally abused the student and threatened him while following him down three flights of stairs (*Id.*).

Plaintiff was again assigned to work remotely while APS conducted its investigation into the incident. (*Id.*). On May 16, 2024, he received a disposition letter informing him that his behavior violated several Board policies, that the superintendent declined to renew his contract for the 2024–2025 school year, and that the incident would be reported to the Georgia Professional Standards Commission ("GAPSC"). (*Id.*). On June 26, Plaintiff interviewed for a teaching job at Jonesboro High School in Clayton County but was told the school could not move forward with the hiring process due to GAPSC's ongoing investigation into his ethics violations. (*Id.*). On August 12, GAPSC completed its investigation, and the ethics violations were removed from Plaintiff's teaching certificate. (*Id.*). On September 3, the assistant principal at Jonesboro High School informed Plaintiff that the position had been filled. (*Id.*).

### *B. Procedural Background*

Plaintiff filed an official charge of discrimination with the EEOC on September 20, 2023. (Doc. 15 at 5, 10). On the charge form, he specified that he experienced retaliation and discrimination based on disability and sex between August 25, 2023 and September 20, 2023. (Doc. 15-1 at 1).[1]

---

[1] Although it is outside the four corners of the complaint, the Court may consider Plaintiff's EEOC charge because "it is central to his claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

He filed his original complaint in this Court on July 10, 2024, asserting various federal and state claims and requesting punitive damages. (Doc. 1). On August 20, 2024, APS moved for a more definite statement or, alternatively, to dismiss all claims against it. (Doc. 6). The Court granted APS' motion for a more definite statement, (Doc. 12), and Plaintiff filed his first amended complaint ("FAC") on February 18, 2025. In it, he asserts the following claims:

1. Sex discrimination in violation of Title VII[1] (Count I);

2. Hostile work environment in violation of Title VII (Count IV);

3. Disability discrimination in violation of the Americans with Disabilities Act[2] ("ADA") (Count II);

4. Intentional infliction of emotional distress in violation of Title IX (Count V);

5. Retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment[3] (Count III); and

6. Retaliation in violation of the Georgia Whistleblower Protection Act[4] (Count III).

(Doc. 15 at 7–15). He again requests punitive damages. (*Id.* at 15).

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] 42 U.S.C. § 12101, *et seq.*

[3] U.S. Const. amend. XIV, § 1. Plaintiff brings suit pursuant to 42 U.S.C. § 1983.

[4] O.C.G.A. § 45-1-4, *et seq.*

6

For its part, APS has now moved for dismissal with prejudice on all counts. (Doc. 16). The motion is ripe for review.

## II. LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the reviewing court looks to see whether the pleading "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The touchstone is plausibility rather than mere possibility. *Id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Ultimately, the pleading standard requires the claimant to allege sufficient facts to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As relevant here, in the employment context, a plaintiff generally need not make out a *prima facie* case, but he must still include enough factual allegations to plausibly suggest his employer unlawfully discriminated against him. *See Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 740 (11th Cir. 2020).

The Court must be mindful that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Even so, leniency does not excuse a plaintiff from complying with threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998).

Nor does such leniency "give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam., Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

### III. DISCUSSION

As an initial matter, because Plaintiff hasn't filed a response to APS' motion to dismiss, the motion is deemed unopposed under Local Rule 7.1(B). *See* LR 7.1(B), NDGa (providing that failure to timely file a response to a party's motion "shall indicate that there is no opposition to the motion"). Even so, the Court must undertake a merits review. *See Bright U.O. v. Mayorkas*, No. 1:22-cv-01560-SDG, 2023 U.S. Dist. LEXIS 173403, *4 (N.D. Ga. Sept. 27, 2023) (holding that "even when a plaintiff fails to respond to a motion to dismiss, the court must still address the motion on its merits").

In its motion to dismiss, APS presents five arguments. (Doc. 16). First, it argues that because Plaintiff's EEOC charge expressly limits the timeframe of the alleged discrimination, any allegations in his complaints regarding events that occurred after September 20, 2023 are time-barred for failure to exhaust.

Second, APS argues that Plaintiff has failed to allege facts that plausibly plead an objectively hostile work environment in support of his Title VII claim. It argues that simply being exposed to offensive language is not enough to plead a hostile work environment and that there is no basis under Title VII for holding it liable for the actions of its students.

Third, APS argues that Plaintiff fails to state a claim under the ADA because he concedes that the administration assigned him to work remotely and requested that he undergo a fitness-for-duty evaluation out of reasonable concerns for his mental health and the safety of his students.

Fourth, APS contends that Plaintiff's Title IX claim should be dismissed because Title IX does not prohibit discrimination based on sexual orientation and does not permit recovery for emotional distress, which is the only injury he claims. Finally, APS argues that Plaintiff has failed to allege facts that plausibly plead a claim for retaliation under either the Equal Protection Clause of the Fourteenth Amendment or the Georgia Whistleblower Protection Act ("GWA").

The undersigned addresses each argument in turn.

### A. Administrative Exhaustion (Counts I, II, & IV)

APS first argues that Plaintiff failed to exhaust his administrative remedies with respect to any alleged discriminatory acts described in his complaint that occurred after September 20, 2023.

Administrative exhaustion is a threshold issue that should be addressed first. Before a plaintiff can sue under Title VII or the ADA, he is required to exhaust a statutorily mandated administrative process by timely filing a charge with the EEOC. *See Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th Cir. 2010) (citing respective statutory provisions). To be timely, the charge must be filed within 180 days of the alleged unlawful conduct. *Id.* § 2000e-5(e)(1); *see also Stewart v. Jones Util.*

9

*and Contracting Co.*, 806 F. App'x 738, 740 (11th Cir. 2020) ("Only unlawful employment practices complained of in a timely filed charge of discrimination to the EEOC can form the basis for liability."). The rationale behind this exhaustion requirement "is the belief that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983).

The allegations contained in an EEOC administrative charge of discrimination limit the scope of any subsequent judicial complaint. *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Consistent with this purpose, judicial claims are permitted only if they "amplify, clarify, or more clearly focus" the EEOC charge allegations. *Id.* (citation omitted). As the Eleventh Circuit has cautioned, "new acts of discrimination are inappropriate" in court. *Id.*

When an employer challenges a claim on exhaustion grounds, the plaintiff bears the burden of proving that he satisfied the charge-filing requirements. *See Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). At the same time, however, the requirements are construed liberally because courts are "extremely reluctant" to bar claims based on procedural technicalities. *Litman v. Sec'y of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017); *see also Tillman v. City of Boaz*, 548 F.2d 592,

594 (5th Cir. 1977)[1] ("Charges filed with the EEOC must be liberally construed because they are made by persons who are unfamiliar with the technicalities of formal pleadings and who usually do not have the assistance of an attorney."); *accord* 29 C.F.R. § 1601.34 (directing liberal construction of the EEOC's rules).

APS argues that because Plaintiff told the EEOC that the alleged discriminatory acts occurred between August 25, 2023 and September 20, 2023 and never amended or supplemented his charge form, any claims based on discrete acts of discrimination that occurred outside that timeframe are barred. The undersigned agrees only with respect to Plaintiff's Title VII disparate treatment claim.

Title VII distinguishes between "discrete discriminatory acts" and continuing violations. *AMTRAK v. Morgan*, 536 U.S. 101, 110 (2002). Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire," and "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113–14. But where an employee alleges that his employer has "continuously maintain[ed] an illegal employment practice," the practice is treated as a continuing violation, which "permits a plaintiff to sue on an otherwise time-barred claim if related acts of discrimination continued to occur within the limitations period." *Manley v. Dekalb County*, 587 F. App'x 507, 511 (11th Cir. 2014).

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

Turning first to Plaintiff's Title VII disparate treatment claim, the undersigned finds that it has not been properly exhausted. Plaintiff's disparate treatment claim is grounded in an incident on March 4, 2024, wherein a former colleague at BWHS reported a student for drawing a picture of her getting shot. (Doc. 15 at 7). He alleges that the administration "took the matter very seriously," removed the student from her classroom, and allowed the teacher to press charges. (*Id.*).

Plaintiff does not reference a specific incident in which he was treated less favorably, alleging only that he "has never been afforded the opportunity to officially press charges on a student for the domestic terrorist threats or homophobic slurs he has endured [...] since his hire in 2021." (*Id.*). But his EEOC charge makes no mention of students making threats against him, and his complaint provides no further details beyond the cursory reference to "domestic terrorist threats." (*Id.*; Doc. 15-1 at 1–2). Nor does his EEOC charge contain any allegations that any similarly-situated colleagues were treated more favorably than him. His disparate treatment claim arises out of factual occurrences that are entirely absent from his EEOC charge and therefore has not been properly exhausted. *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) ("Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate."); *Ball v. Target Corp.*, No. 1:18-CV-03783-SCJ-JFK, 2019 U.S. Dist. LEXIS 249761, *19 (N.D. Ga. Mar. 4, 2019) ("Each allegation of a type of discriminatory act raises a new theory of liability which requires administrative exhaustion."), *R&R adopted*, 2019 U.S. Dist. LEXIS 249765 (N.D. Ga.

Mar. 29, 2019).

With respect to Plaintiff's Title VII hostile work environment claim, the undersigned finds that because it constitutes a continuing violation, it has been properly exhausted. The U.S. Supreme Court has instructed that, owing to the continuing nature of workplace harassment, "a hostile work environment […] constitutes one 'unlawful employment practice' and so long as one act contributing to the claim occurs within the filing period, 'the entire time period of the hostile work environment may be considered.'" *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1258 (11th Cir. 2008) (quoting *Morgan*, 536 U.S. at 117). In his EEOC charge, Plaintiff references being repeatedly "harassed and bullied" for his sexual orientation and being subjected to "sexual harassment." (Doc. 15-1 at 1). Because hostile work environment claims are treated as a "continuing action," and because in his charge Plaintiff alleges he was repeatedly harassed, the undersigned declines to limit Plaintiff's Title VII hostile work environment claim to the incidents that occurred between August 25, 2023 and September 20, 2023.

Likewise, the undersigned finds that Plaintiff's discrimination claim under the ADA could reasonably be expected to grow out of his EEOC charge. In his charge, he claimed he was discriminated against based on disability and alleges that Wade suggested he seek mental health assistance, warning that "he could not have [Plaintiff] working at the school if [he was] unstable." (Doc. 15-1 at 2). Plaintiff's complaint expands his allegations to include his October 6, 2023 assignment to work remotely

while HR investigated his alleged misconduct and the administration's October 20, 2023 request that he undergo a medical evaluation. (Doc. 15 at 5). Both of these employment actions arose out of the administration's concern for Plaintiff's mental health, which Plaintiff describes in his EEOC charge as discriminatory. Because these new allegations are related to the claims contained in his EEOC charge, and his charge would reasonably lead to an EEOC investigation of disability discrimination, Plaintiff's ADA claim was properly exhausted.

In sum, the undersigned **RECOMMENDS** that APS' motion to dismiss be **GRANTED** only as to Plaintiff's Title VII disparate treatment claim (Count I) for failure to exhaust.

### B. Disability Discrimination (Count II)

Next, APS argues that Plaintiff's ADA claim should be dismissed because he did not plausibly plead that it treated him discriminatorily.

The ADA prohibits employers from discriminating against disabled employees. *See* 42 U.S.C. § 12112(a). To state a discrimination claim under the ADA, the plaintiff must allege facts to plausibly suggest that: (1) he suffers from a "disability"; (2) he is a "qualified individual"; and (3) his employer discriminated against him on the basis of his disability. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015). The ADA defines "disability" broadly to include: "(A) a *physical or mental impairment* that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) *being regarded as* having such

14

an impairment." 42 U.S.C. § 12102(1) (emphasis added); *see also* 29 C.F.R. § 1630.2(g). In this case, the parties do not dispute that APS regarded him as disabled. But APS argues that Plaintiff has pled himself out of a claim by pleading facts to show that BWHS administrators acted out of an objectively reasonably concern that his erratic behavior could pose a safety risk to his students.

Plaintiff alleges that APS discriminated against him by requiring him to work remotely and requesting that he submit to a medical evaluation. An employer may require a psychological evaluation of fitness for duty if it is "job related and consistent with business necessity." *Owusu–Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013); *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir.1999). If the employer has a "reasonable, objective concern about [Plaintiff's] mental state," a fitness-for-duty evaluation is permitted. *Owusu–Ansah*, 715 F.3d at 1312.

Here, Plaintiff concedes that he chased a student through the halls for calling him a homophobic slur and had a mental breakdown in front of two assistant principals wherein he stated that he would "snap at any time." (Doc. 15-1 at 11). The administration's letter requesting that Plaintiff undergo a medical evaluation also cited an incident on August 4, 2023 where he purportedly "screamed, jumped up and down and threw papers off Principal Wade's desk, threw other objects and knocked a board off the wall," and his September 18, 2023 professional development meeting wherein he allegedly "became combative and confrontational." (*Id.*). As a governmental entity responsible for the well-being of the students subject to Plaintiff's jurisdiction as a

15

teacher, these allegations are more than sufficient to show APS was reasonable in requesting a fitness-for-duty certification. *See Mickens v. Polk Cnty. Sch. Bd.*, 430 F. Supp. 2d 1265, 1275 (M.D. Fla. 2006) ("The mental and emotional fitness of those charged with the well-being of school children is among the most vivid and essential examples of this 'legitimate concern.'"), *aff'd*, 195 F. App'x 928 (11th Cir. 2006). Plaintiff has therefore failed to plausibly plead that the request to undergo a medical evaluation was discriminatory.

Insofar as he attempts to argue that his assignment to remote work during the investigation into his alleged misconduct was discriminatory, this too is unavailing. Courts in this Circuit have repeatedly found that straightforward investigations are not themselves actionable unless or until other facts demonstrate the investigation was spurious or otherwise predetermined to result in harm to the plaintiff. *See, e.g., Rademakers v. Scott*, 350 F. App'x 408, 412–13 (11th Cir. 2009); *Carrio v. Apollo Grp.*, No. 1:07-CV-1814-BBM, 2009 U.S. Dist. 69026, *8 (N.D. Ga. Aug. 7, 2009) (holding that "being placed on paid administrative leave pending an internal investigation did not constitute an adverse employment action pursuant to well-established law"). Here, Plaintiff does not allege that he was placed on administrative leave. Rather, he was assigned to work remotely during the pendency of the investigation into his behavior, and APS ultimately declined to pursue disciplinary action. And he does not allege any facts showing the investigation was spurious or otherwise motivated by discriminatory intent.

In short, Plaintiff has failed to allege that he was subjected to any discriminatory employment action because of disability. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's disability discrimination claim be **DISMISSED**.

### C. Title VII Sex-Based Hostile Work Environment (Count IV)

Plaintiff next alleges that APS violated Title VII by subjecting him to a sexually hostile work environment caused by his students' use of homophobic slurs. APS argues that the complaint fails to allege an objectively hostile work environment and that, in any event, it cannot be liable for alleged harassment by students rather than its employees.

An employer may be liable for violating Title VII when harassing conduct unreasonably interferes with an employee's job performance by creating a hostile, intimidating, or offensive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To prevail on a sexually hostile work environment claim, a plaintiff must show that: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on his sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable. *Reeves v. C.H. Robinson Worldwide, In*c., 594 F.3d 798, 808 (11th Cir. 2010) (*en banc*). Discrimination based on sexual orientation is sex discrimination. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020)

("[D]iscrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second.").

To plead harassing conduct sufficiently severe or pervasive to be actionable under Title VII, a plaintiff must plausibly allege that he subjectively perceived the working environment to be abusive and that a reasonable person would view the environment as hostile and abusive. *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020). When evaluating the objective severity of the alleged hostile work environment, a court assesses: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013). Hostile work environment claims "are based on the cumulative effect of individual acts" that may occur "over a series of days or perhaps years" rather than on any particular day. *Morgan*, 536 U.S. at 117; *see also Freeman v. City of Riverdale*, 330 F. App'x 863, 866 (11th Cir. 2009) (holding that the multiple acts that contribute to the hostile environment are to be "viewed as a single, continuous unlawful employment practice").

Plaintiff has not plausibly alleged an objectively hostile work environment based on sex. "Frequent conduct, be it daily or otherwise, is an important marker of pervasiveness." *Allen v. Ambu-Stat, LLC*, 799 F. App'x 703, 709 (11th Cir. 2020). During the Fall 2023 semester, Plaintiff alleges that a student called him a "faggot" and,

approximately a week later, a coworker told him three of her students had also referred to him using homophobic slurs. (Doc. 15 at 5). And he alleges that, on September 8, 2025, he overheard a student call another student "faggot." (*Id.*). These are the only instances of harassment based on his sexual orientation that Plaintiff describes at BWHS. After his transfer to D.M. Therrell High School, Plaintiff notes three incidents in which students called him "gay" or "faggot" between January 8, 2024 and March 5, 2024. While undoubtedly offensive, this does not rise to the level of frequency required to plead a hostile work environment claim. *See Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806 (11th Cir. 2012) (finding plaintiff did not allege frequent harassment where the record included a few dozen derogatory comments over the course of eleven months); *cf. Poague v. Huntsville Wholesale Furniture*, No. 7:18-CV-00005-LSC, 2020 U.S. Dist. LEXIS 201689, *5 (N.D. Ala. Oct. 29, 2020) (finding that alleged harassment was frequent when supervisor flagged attractive female customers every time one walked in and degraded women every day); *Fernandez*, 961 F.3d at 1154 (concluding that alleged harassment was frequent when a plaintiff who gave several examples of disparaging comments and testified that such comments occurred "daily or every other day over a two-month period").

Moreover, Plaintiff has not alleged that any of the students' comments related to his sexual orientation were physically threatening. While he describes one incident wherein a student threatened to "smack or punch" him, he does not allege that it had anything to do with his sexual orientation. It therefore cannot be considered as part of

his hostile work environment claim. *See Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007) ("Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category."); *see also Reeves*, 594 F.3d at 809 (holding that only conduct that is "based on" a protected category such as sex may be considered in a hostile work environment analysis).

Because Plaintiff fails to plead facts establishing that he was subject to severe and pervasive harassment, the undersigned **RECOMMENDS** that APS' motion to dismiss be **GRANTED** as to his Title VII hostile work environment claim.[1]

### D. Title IX Claim (Count V)

As for Plaintiff's Title IX claim, APS argues that it must be dismissed because the statute forecloses recovery for emotional distress.[2] The undersigned agrees.

Title IX prohibits sex-based discrimination in education. *See* 20 U. S. C. §1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any

---

[1] Because Plaintiff has failed to plausibly plead a hostile work environment claim, the undersigned need not reach APS' argument regarding the viability of a student-created hostile work environment claim.

[2] APS also argues that dismissal is warranted because Title IX does not contemplate discrimination based on sexual orientation. It is unclear whether this is true post-*Bostock*, which stood for the proposition that discrimination based on sexual orientation is functionally identical to discrimination based on sex. *Bostock*, 590 U.S. at 726. But because Plaintiff cannot pursue his theory of recovery under Title IX in any event, the undersigned need not address the argument.

education program or activity receiving Federal financial assistance."). But the U.S. Supreme Court has held that emotional distress damages are not recoverable under Spending Clause antidiscrimination statutes. *See Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 222 (2022). ("[W]e therefore cannot treat federal funding recipients as having consented to be subject to damages for emotional distress."). While *Cummings* does not expressly address Title IX, it was enacted pursuant to the Spending Clause. *See id.*; 20 U.S.C. § 1681. Courts in this Circuit have interpreted this to foreclose recovery for emotional distress through Title IX claims. *See, e.g., Doe v. Sch. Bd. of Palm Beach Cnty.*, No. 21-81560-CIV-SINGHAL, 2023 U.S. Dist. LEXIS 41234, *2 (S.D. Fla. Jan. 3, 2023) ("Cummings makes clear that emotional distress damages are non-recoverable under the Spending Clause antidiscrimination statutes, including Title IX."); *Williams v. Orange Cnty. Sch. Bd.*, No. 6:22-CV-1773-RBD-DCI, 2023 U.S. Dist. LEXIS 246854, *2 (M.D. Fla. May 3, 2023). Accordingly, the undersigned **RECOMMENDS** that APS' motion to dismiss be **GRANTED** as to Plaintiff's Title IX claim.

### *E. Equal Protection Claim (Count III)*

Turning next to Plaintiff's constitutional claim, he appears to argue that APS violated his right to equal protection under the Fourteenth Amendment by reassigning him to work from home in October 2023 and March 2024 and issuing him a letter of direction in November 2023 for failing to complete his work in a timely manner.

As an initial matter, Plaintiff seems to be attempting to bring a retaliation claim under the Fourteenth Amendment. He asserts a claim for "retaliation in violation of 4.2. [sic] Section 1983 and the Equal Protection Clause of the Fourteenth Amendment." (Doc. 15 at 10). But it is well-established that a retaliation claim cannot form the basis for a constitutional equal protection violation. *See Watkins v. Bowen*, 105. F.3d 1344, 1354–55 (11th Cir. 1997); *see also Teigin v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007) (retaliation claims cannot form basis for violation of the equal protection clause); *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004) ("[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause.").

In any event, Plaintiff has failed to plausibly allege that APS is liable for any violation. Municipalities and other local government entities, like school districts, are considered "persons" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Davis v. Dekalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000) (identifying school districts as a municipality for § 1983 purposes). But a local government entity can be held liable under Section 1983 *only* if the plaintiff is able to show that the entity *itself* caused the violation at issue. *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing *Monell*, 436 U.S. at 690–94). Accordingly, in order to state such a claim, a plaintiff must allege that (1) "his constitutional rights were violated;" (2) "the municipality had a custom or policy that constituted deliberate indifference to that constitutional right;" and (3) "the policy or custom caused the

violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A policy, meanwhile, "is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Id.*

Here, Plaintiff does not allege that APS had a custom or policy that was deliberately indifferent to his constitutional rights. *See McDowell*, 392 F.3d at 1289. He alleges that he was reassigned to work remotely while the administration investigated his behavioral incidents. But his complaint makes no policy or practice allegations, and he does not allege that any similarly situated coworkers were treated more favorably after engaging in similar conduct. Indeed, in the context of his Equal Protection claim, he does not identify any similarly situated coworkers at all. Nor has he identified any cognizable constitutional right that such custom or policy might have violated.

Because Plaintiff's retaliation claim is not cognizable under the Equal Protection Clause of the Fourteenth Amendment and because, in any event, he does not plead facts to establish that APS had a custom or policy that was deliberately indifferent to his constitutional rights, he cannot sustain the claim. Accordingly, the undersigned **RECOMMENDS** that APS' motion to dismiss be **GRANTED** as to Plaintiff's Equal Protection claim.

### F. State Law Claim (Count III)

Finally, APS urges dismissal of Plaintiff's GWA claim because it contends he failed to allege he engaged in protected activity.

A merits discussion of Plaintiff's state claims is unnecessary at this time, given that the undersigned has concluded that his federal claims are due to be dismissed. *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). There is nothing exceptional about the nature of the state claims in this case that would justify this Court's exercise of supplemental jurisdiction. *See Carnegie-Mellon v. Cohill*, 484 U.S. 343, 350 (1988) ("When the balance of these factors [*e.g.*, judicial economy, convenience, fairness, and comity] indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ." (footnote omitted)). Therefore, APS' motion to dismiss Plaintiff's GWA claim (Count III) under Rule 12(b)(6) should be **DENIED**, but the Court should nevertheless decline supplemental jurisdiction and dismiss the state claims without prejudice.

## IV. CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that APS' motion to dismiss, (Doc. 16), be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** that Plaintiff's federal claims (Counts I, II, III

(federal), IV, & V) be **DISMISSED *WITH PREJUDICE*** under Rule 12(b)(6), and that his state claim (Count III (state)) be **DISMISSED *WITHOUT PREJUDICE*** for lack of jurisdiction.

      IT IS SO **RECOMMENDED** on this 26th day of January 2026.

_____
REGINA D. CANNON
United States Magistrate Judge